## RYALS *v.* JOHNSON COUNTY SAVINGS BANK.

1. Upon the trial of a suit on a promissory note containing no negotiable words, when the defendant has duly filed a plea of failure of consideration and has introduced evidence tending to sustain such plea, it is error for the court to direct a verdict for the plaintiff, although it appear that the plaintiff was a bona fide purchaser of the note before due and without notice of any defense thereto.

2. Where the defendant pleads that the goods for which the note was given were worthless, it is not error to admit in evidence before the jury, over objection of his counsel, testimony as to the value defendant placed on the goods when he applied for a policy of insurance on a stock of merchandise which included the articles in question.

3. It is error, in such a case, to admit testimony of defendant, over his objection, that the insurance company would probably have paid him full value for the goods had he insured them at the invoice price.

4. If there was any error in ruling out answers to questions seeking to show fraudulent collusion between the payee and the holder of the note sued, based upon knowledge of the holder, at the time he bought the note, of defense thereto, such error was harmless in this case, as the answers to the questions did not tend to sustain any defense pleaded to the action.

Argued November 18, 1898. — Decided March 4, 1899.

Complaint. Before Judge Smith. Dodge superior court. April term, 1898.

*D. C. McLennan,* for plaintiff in error.
*Eason & McRae,* contra.

LEWIS, J. The Johnson County Savings Bank sued Ryals for $116.56 principal, besides interest, alleged to be due upon a promissory note signed by the defendant, payable to the New England Jewelry and Silverware Company, indorsed by that company to the plaintiff, and due as follows: $38.82, May 10, 1896; $38.82, July 10, 1896; $38.82, September 10, 1896; and $38.82, November 10, 1896. The defendant pleaded total failure of consideration, alleging that the note was given for jewelry bought of the New England Jewelry and Silverware Company, which jewelry the company represented to defendant was plated with a certain amount of gold and guaranteed to wear for —— years without tarnishing; that the jewelry was nothing but brass and was only slightly smoked with gold, and would become tarnished with the slightest handling; and that it was absolutely worthless and unsalable. Defendant further pleaded that the plaintiff was not a bona fide holder of the note, but had entered into a conspiracy with the original payee, W. F. Main Company and others, for the purpose of defrauding defendant and other merchants, the scheme being for the jewelry company to sell worthless jewelry, guaranteeing it to be heavily plated and to wear three or four years, to obtain the notes of the purchasers and to transfer the same to plaintiff before due, in order to prevent defendant and others from pleading and proving a failure of consideration. On the trial of the case the court, at the conclusion of the evidence, directed a verdict in favor of the plaintiff for the amount sued for. To this and to the admission of certain evidence and the exclusion of certain interrogatories and the answers thereto, the defendant

excepted. The testimony in behalf of plaintiff tended to establish the fact that it was a bona fide purchaser, for value and before maturity, of the notes sued upon, without notice of any defense. There is no evidence in the record to contradict this. On the other hand, the testimony introduced in behalf of the defendant tended to show that the jewelry for which the note was given was warranted by the vendor, who was the payee of the note, to be heavily plated with gold and guaranteed not to tarnish in three or four years. After the goods were received by the defendant, he paid the first instalment due upon the note and sold some of the goods to different customers of his. The goods appeared to be all right, and he was aware of no defect in them until some of the purchasers from him had returned the goods and had shown him that they were so easily tarnished as to be utterly worthless. On this account he was forced to refund the money to nearly all the parties who had purchased from him, and to receive back the goods. He notified the vendor of the goods of their defects, and proposed to "ship back the entire lot and to square off even" with it. To this proposition the jewelry company made no reply. The defendant continued to try to sell some of the goods and realized a small amount of money upon them, but they were utterly worthless and valueless. The bulk of them he had still on hand and offered to turn over to the plaintiff. What he realized from the small sales made would not amount to as much as the sum he had paid upon the note before he had noticed that they were made of nothing but brass and were worthless.

1. One error assigned in the bill of exceptions is, that the court erred in directing a verdict for the plaintiff. The case seems to have been tried below upon the theory that if the plaintiff had in good faith purchased the note, before due and without notice or knowledge of any defense, it would be protected against a plea of failure of consideration. The note sued upon contained no negotiable words whatever. Section 3694 of the Civil Code provides that a bona fide holder of negotiable instruments, who receives the same before due and without notice of any defect or defense, shall be protected against any defense of the character of that set up by the maker

in this case.   The term "negotiable instrument," as here used, means such instrument as contains upon its face negotiable words, and applies only to paper which the parties render negotiable as a part of their express contract.   It is true that there is another section of the Civil Code which provides in effect that although a promissory note may not contain any negotiable words, yet it may be negotiated and transferred simply by indorsement by the payee, as was done in this case. Civil Code, § 3681.   This section, however, means that title to such paper may be in this manner transferred.   It does not, strictly speaking, render the paper a negotiable instrument. In a similar manner may title to an account be transferred ; namely, by a written transfer of the same.   This would make the account negotiable in the sense that title thereto will be passed to the assignee, but it does not follow that such an assignee would be protected against any defense which the debtor might have against the claim.   But this is no new question in this court.   In the case of *Cohen* v. *Prater, 56 Ga. 203,* it was decided that "the indorsee of a note containing no negotiable words is chargeable with notice of all defects in the consideration, although he takes it before due and for value."   The opinion Bleckley, J., rendered in that case fully discusses the various sections of the code bearing upon the question, which sections are embodied in the present code and are still of force in this State ; and it would be useless work to attempt to add anything to the lucid argument he presents.   To the same effect see *Hamilton* v. *Insurance Co., 65 Ga.* 750, and *Adams* v. *Robinson,* 69 *Ga.* 627, 630.   It follows, therefore, that it was utterly immaterial whether or not the defendant in error in this case had notice of any defense to the note sued upon, when it was purchased ; and the evidence in behalf of the maker of the note tending to sustain his plea of a failure of consideration, the court erred in directing a verdict for the plaintiff.

2. It appears from the evidence in the record, that the maker of the note in question had obtained a policy of insurance upon his stock of merchandise including the property in question. He testified, upon cross-examination, that he valued this jewelry at some small sum, and that after he had been burned out

the insurance company paid him about twenty or twenty-five dollars as insurance on the jewelry. This testimony was objected to by counsel for defendant; but we think it clearly admissible as tending to establish an admission by the purchaser of the goods as to their value after he had obtained possession of them.

3. On cross-examination, the defendant further testified that, had he valued the goods at their invoice price, the insurance company would probably have paid him such full value. It seems from the evidence that the stock of merchandise of the insured was burned, but that the bulk of the jewelry itself was saved from fire. We think the court erred in admitting this testimony, over objection of defendant's counsel, for it was entirely immaterial what the insurance company would have done had the insured placed a different and incorrect valuation upon his goods.

4. There were also exceptions taken and error assigned upon the rulings of the court in excluding divers cross-questions and answers thereto in the interrogatories taken out for witnesses who swore in behalf of the plaintiff below. By these questions counsel for defendant sought to show a fraudulent collusion between the payee and the holder of the note, knowledge on the part of the holder, at the time it bought the note, that the maker had a valid defense thereto, and that the object of the transfer of the note by the payee was simply to put the plaintiff in the attitude of an innocent purchaser. The answers to these questions did not tend to sustain any defense pleaded to the action. Besides, they were entirely immaterial in the view we take of the case, as the validity of the plea of failure of consideration which was relied upon did not depend upon any knowledge or want of knowledge on the part of the holder of the note at the time the same was transferred to it by the payee. The exclusion of this testimony was, therefore, harmless to the defendant and was not erroneous.

*Judgment reversed.     All the Justices concurring.*