## BOSWORTH *v.* NELSON.

No. 8076. APRIL 16, 1931.

*W. H. Burt,* for plaintiff in error.

*Allen & Peacock* and *Howell Cobb,* contra.

RUSSELL, C. J. This is the second appearance of this case in this court. In the original litigation in the lower court, Nelson applied for an injunction restraining Bosworth from interfering with his boating and fishing privileges on certain described waters. He alleged, among other things, that the sale of permits to swim in these waters, and diving and swimming thereon, was being exercised in a boisterous and clamorous manner, and interfered with his quiet and peaceful use and enjoyment of his boating and fishing privileges. *Bosworth* v. *Nelson,* 170 *Ga.* 279 (152 S. E. 575). Upon the trial now under review, the evidence was not dissimilar to that considered upon the interlocutory hearing. At the conclusion of the evidence the trial judge directed a verdict for the plaintiff, and granted a permanent injunction "enjoining the said Bosworth, in the operation of his amusement resort Lakeworth, from engaging in the business of fishing or boating on the ponded waters

on the particular 146.4 acres of land described in deed from Fannie I. Nelson and T. M. Nelson to Albany Power & Manufacturing Co., dated November 18, 1909, recorded in deed book 17, page 104; and also the deed between the same parties, dated August 18, 1903, recorded in deed book 13, page 351, clerk's office superior court, Dougherty County, Georgia; and permanent injunction is hereby decreed against said L. B. Bosworth, in the operation of his amusement resort Lakeworth, from engaging in said business of fishing or boating on said waters." It was further decreed, upon the verdict, that Bosworth should not be restrained or enjoined from the operation of his swimming or bathing rights, whatever they may be, at Lakeworth resort. Bosworth excepted to the judgment and decree in so far as it relates to the exclusive fishing and boating rights of Nelson. The motion for new trial contains the usual general grounds, and by amendment there was added a fourth ground, as follows: "Because upon the trial of said case the court erred in directing a verdict in favor of the plaintiff, T. M. Nelson, and against the defendant, L. B. Bosworth, as to the exclusive fishing and boating rights on the waters on lands described in plaintiff's petition, and permanently enjoining defendant, L. B. Bosworth, in the operation of his amusement resort Lakeworth, from any further interference therewith, to which ruling and decision and action of the judge thereon exceptions pendente lite have also been filed in this case." As will be seen, the fourth ground is insufficient to raise the point that the court erred in directing the verdict, since the movant does not contend or point out that the court erred because there were issues of fact which should have been submitted to a jury and evidence which would have authorized the jury to find a different verdict than that directed by the court. This assignment of error is insufficient to present anything more for the consideration of this court than the usual general ground that the verdict is contrary to the evidence. *Hamlin* v. *Johns,* 166 *Ga.* 880 (144 S. E. 659), and cit.

Since the question as to whether the court erred in directing the verdict is not before us, and since upon a review of the evidence it can not be said that the verdict was not authorized by the evidence, the issue before this court is purely one of law. After careful consideration, it appears that the decision in the present case is controlled by the prior ruling of this court in *Bosworth* v. *Nelson,*

supra. In fact, learned counsel for plaintiff in error practically concedes in his argument that the right of Nelson to the exclusive fishing privileges claimed by him has been finally determined adversely to the plaintiff in error. We are of the opinion that the prior decision of this court, as a matter of course, includes the boating privileges. It is immaterial that the boating privileges may not be of the same nature as profit á prendre, and do not relate to profits to be derived from the soil. However, the same instrument which conferred upon Nelson the fishing privileges, however they may be denominated, and regardless of their classification in legal terminology, also conferred at the same time the exclusive boating privileges covering the same territory and of the same extent as his fishing privileges. What, then, were the boating privileges retained or assigned to Nelson? "Boating," as used in or conferred upon the reservation by Nelson, acquires its significance from the circumstances of the case, and the peculiar nature of the contract. The usual rules applicable to navigable streams throw no light upon the meaning of the word "boating" in the connection with which it is employed, because by every rule the water accumulated and permanently held by the erection of the dam of the Albany Power Company was wholly artificial. Prior to the sale by Nelson and his mother it was land, and not water, that was the subject of bargain and sale, though the land was traversed by Kinchafoonee, Muckalee, and Muchafoonee creeks. None of these streams was navigable, and navigation was not the purpose of the erection of the dam, and the overflow of the land which was conveyed by Nelson, and which was the main consideration inducing the purchase of the land by the vendee, was merely the result foreseen which would be affected by the erection of the dam. In other words, in this particular case, for the purpose of overflow, the original purchasers of the land from Nelson and his mother, as well as that later purchased from Nelson himself alone, bought the land for the very purpose of overflowing it by the pond which the dam would create. These purchasers were willing to sell the fishing and boating privileges upon this pond. These rights did not in any way affect the title in the fee to the subjacent soil, or impose any liability on the purchasers for damages arising from flooding the land. The purchasers got all the interest in the land which the Nelsons ever had, except the right of the Nelsons to fish and boat

on the two tracts of land specifically described, together containing 146.4 acres.

It is now argued by the plaintiff in error that he, as a member of the public, has some interest in boating upon this pond of water artificially collected, as a means of transportation. It is argued that, granting that the decision of the court when here before was adverse to the contention of the plaintiff in error as to the fishing privileges, nevertheless persons who live in the vicinity have the right of boating, either for amusement or for the purpose of using boats for transportation to lands near by or adjacent to the water impounded by the Nelsons' successors in title. We are of the opinion that since neither a public nor a private highway can be created in this State upon the surface of another's realty except by operation of law, or by prescription under the terms of the law, no more can the right of locomotion by a boat or right to navigate in any way be otherwise sustained. And so we hold, since this pond is not a navigable stream, that the water impounded by the power company can not be subjected as a means of travel, or as being boatable, for any purpose, except with the consent and permission of the defendant in error, Nelson. The right of fishing and boating was granted to him, or reserved by him, in the two tracts of land accurately described. The contract was a private contract of bargain and sale, with a reservation. The fact that the water thus accumulated might thereafter afford neighboring landowners a shorter or more convenient means of access and egress from their homes does not confer upon them the right to use this water for any purpose without the consent of the owner of the soil, because the water thus impounded is under no construction either a navigable or a boatable stream; and the purchaser of the land having granted the uses of the water which might be accumulated within the boundaries of the 146.4 acres exclusively to Nelson, any violation of this right would be a trespass. So we are of the opinion the trial judge did not err in directing a verdict in favor of the plaintiff, or in refusing the motion for a new trial. Any one interested in the question will find a very illuminating discussion of the subject of boating in New England Trout & Salmon Club v. Mather, 68 Vt. 338 (35 Atl. 323, 33 L. R. A. 569). See also The Daniel Ball, 77 U. S. 557 (19 L. ed. 999).

*Judgment affirmed. All the Justices concur.*